THE BILTMORE COMPANY v. HERBERT C. HAWTHORNE, F. ROCK-
WELL POISSON, RUSSELL E. DAVENPORT, WADE H. HAR-
GROVE, OREN J. HEFFNER, B. F. NESBITT, VILA M.
ROSENFELD, DAVID A. SMITH, DANYA YON AND WILLIAM
E. YOUNTS, JR.

No. 7628SC811

(Filed 6 April 1977)

Agriculture § 16— price of reconstituted buttermilk — action against mem-
bers of Milk Commission — exhaustion of administrative remedies —
real parties in interest

A milk distributor's action against individual members of the
N. C. Milk Commission seeking a declaratory judgment of the validity
of action by the executive director of the Milk Commission requiring
plaintiff to account and make payment to its producers for reconsti-
tuted buttermilk at the Class I price in accordance with a Milk Mar-
keting Order classifying reconstituted buttermilk as Class I milk is
dismissed for failure of plaintiff to exhaust its administrative reme-
dies and for failure to bring the action against the real parties in
interest.

APPEAL by plaintiff from *Ervin, Judge.* Order entered 23
September 1976 in Superior Court, BUNCOMBE County. Heard in
the Court of Appeals 15 March 1977.

Plaintiff is engaged in the business of processing and dis-
tributing milk and milk products.

Defendants are the members of the North Carolina Milk
Commission, a state agency created by Article 28B, Chapter
106 of the General Statutes.

In part, the complaint is as follows:

"STANDING

3. Plaintiff brings this action pursuant to the pro-
visions of the North Carolina Declaratory Judgment Act,
North Carolina General Statute § 1-253 et seq., and Rule 57
of the North Carolina Rules of Civil Procedure against the
defendants in their capacity as members of the North
Carolina Milk Commission to obtain a declaration by the
Court as to the validity and constitutionality of a regulation
of said Commission, to wit: Section IV A (1) of Milk Mar-
keting Order Number Two, as the same is interpreted and
applied by said Commission to the classification of plain-

tiff's production and distribution of reconstituted or recombined milk.

4. Defendants are not immune from this suit under the doctrine of sovereign immunity as plaintiff seeks herein to have said regulation, as so interpreted and applied by defendants, declared to be in excess of defendants' statutory authority and contrary to the Constitutions of the United States and North Carolina.

### CONTROVERSY

5. Defendants are, by virtue of North Carolina General Statute § 106-266.8(10), vested with the power to fix prices to be paid milk producers by distributors and to fix different prices for different grade or classes of milk.

6. Defendants or their predecessors have enacted, and defendants are maintaining in force, a regulation known as Milk Marketing Order Number Two, Section IV of which provides in pertinent part as follows:

'A. MILK CLASSIFICATION

1. Class I shall include the product weight of all fluid milk, fluid milk products, (including products sweetened or flavored), all skim milk and butterfat which is sold or disposed of for consumption or use as processed fluid milk products under any trade name (regardless of grade), except milk shake mix, heavy cream, medium cream, half and half, ½ oz. coffee creamers, egg nog, and any other cream items which are classified in a lower class and military sales approved for Class 1A.

Class I includes, but is not limited to, the following type milk products:

Pasteurized milk, homogenized milk, raw milk, whole lactic milk, buttermilk, plain and flake buttermilk, skim milk, fortified skim milk with added solids, chocolate or flavored milks or milk drinks, dietary modified milk, sterile milk, reconstituted milk and concentrated milk.

Class I shall also include any volume of fluid loss or shrinkage in excess of three percent (3%) of

each month's reconciliation as computed in accordance with Section IV-D-5 of Milk Marketing Order Number Two. Any excessive loss computed which is to be paid as Class I to producers shall be paid in the producer payroll for the month following the month in which such loss occurred.

All fluid milk sold to military installations shall be classified as Class I except for such classifications and class prices for specified periods as may be approved by the Milk Commission.

IA. Class IA shall include:

All bulk milk sold to other distributors or transferred between branches or plants of the same company for fluid use as defined in paragraph A-1 of this Section including transfers for military usage for which a different producer price may apply. Also, Class IA shall include the sales of milk made directly to military installations for which a producer price different from the Class I price may apply.

2. Class II may include:

All milk received and not accounted for in Class I and Class IA, including plant loss or shrinkage volume not in excess of three percent (3%) of the total weight to account for as determined by the provisions of Section IV-D-5(a).'

7. The prevailing price as established by defendants to be paid producers by distributors for Class I utilization milk is $11.12 per hundredweight and the prevailing price for Class II utilization milk is $8.36 per hundredweight. During March, 1976 said Class I price was $11.12 per hundredweight and said Class II price was $8.62 per hundredweight.

8. During the month of March, 1976, plaintiff manufactured and sold or disposed of for consumption or use within this State as a processed fluid milk product 10,010 pounds of reconstituted buttermilk which consisted of 8,964 pounds of water, 86 pounds of culture together with 960 pounds of a product known as Grade A low heat spray

non-fat dry milk solids, hereinafter referred to as 'milk powder.'

9. Said milk powder had theretofore been purchased by plaintiff in interstate commerce from Clofine Dairy Products, Incorporated of Linwood, New Jersey, having been produced in the states of Maryland and Virginia and manufactured in the State of Maryland.

10. In making payment to its base-holding producers for the month of March 1976, plaintiff accounted for said reconstituted buttermilk as Class II utilization milk and made payment to its base-holding producers accordingly.

11. Plaintiff has refused to account and make payment to its base-holding producers at the Class I price for said product and defendants, by and through their Executive Secretary, Grady Cooper, Jr., have, by letter to plaintiff dated June 18, 1976, directed plaintiff to account and make payment to its base-holding producers for said product at the Class I price therefor.

12. Plaintiff intends to continue the manufacture of recombined buttermilk as above-described and likewise intends to commence the manufacture of recombined low-fat milk under a similar process utilizing milk powder to be purchased by plaintiff in interstate commerce from sources outside the State of North Carolina. Upon the sale or disposition of such products by plaintiff for consumption or use as processed fluid milk products, plaintiff intends to classify the same as Class II products for purposes of accounting and making payment to its base-holding producers and intends to refuse to pay Class I prices therefor.

13. As a result of the foregoing, there exists a genuine controversy between plaintiff and defendants as to plaintiff's legal rights arising from North Carolina General Statute § 106-266.8(10), Section IV A(1) of Milk Marketing Order Number Two and the Constitutions of the United States and the State of North Carolina and plaintiff and defendants have adverse interests in such controversy.

### VIOLATIONS

14. By directing and requiring plaintiff to account and make payment to its base-holding producers for such reconstituted product at the Class I price, defendants were and are acting in excess of their statutory authority as granted and conferred by North Carolina General Statute § 106-266.8(10).

15. By directing and requiring plaintiff to account and make payment to its base-holding producers for such reconstituted product at the Class I price, defendants were and are acting contrary to their own regulation fixing prices to be paid milk producers by distributors and fixing different prices for different grades or classes of milk, to wit: Section IV A(1) of Milk Marketing Order Number Two.

16. By directing and requiring plaintiff to account and make payment to its base-holding producers for such reconstituted product at the Class I price, defendants were and are acting contrary to Article I, § 19 of the Constitution of North Carolina, to Article I, Section 8 of the Constitution of North Carolina, to Article I, Section 8 of the United States Constitution and to the Fourteenth Amendment to the Constitution of the United States.

WHEREFORE, plaintiff prays that the Court determine the rights of the parties as respects defendants' interpretation and application of Section IV A(1) of Milk Marketing Order Number Two; declare that plaintiff is not required to account and make payment to its base-holding producers for such reconstituted products as Class I prices; tax the costs against defendants and afford plaintiff such other and further relief to which it may be entitled."

Defendants' motion to dismiss was heard by Judge Ervin who entered an order of dismissal, in pertinent part, as follows:

". . . [A]nd it appearing to the Court that the individual defendants are not the real party in interest, that plaintiff has not sought relief in accordance with the North Carolina Administrative Procedure Act, and that Buncombe County Superior Court is without jurisdiction to hear the matter; and it appearing to the Court that the motion should be allowed. . . ."

From the entry of that order, defendants appealed.

*Adams, Hendon & Carson, P.A., by George Ward Hendon and George Saenger, for plaintiff appellant.*

*Harris, Poe, Cheshire & Leager, by W. C. Harris, Jr., for defendant appellees.*

VAUGHN, Judge.

We have concluded that plaintiff should have exhausted the administrative remedies available to it instead of instituting this suit against the individuals named in the complaint. The Milk Marketing Order set out in the complaint was adopted and has been in effect since 1 October 1967. It seems to us that plaintiff's attack is really directed at the interpretation of the order by the executive director of the North Carolina Milk Commission, (an entity not even a party to the lawsuit) as it relates to a particular product distributed by plaintiff. Defendants, as individuals, have no authority over the executive director and have threatened no action against plaintiff. As individuals, they cannot do so. Neither has the North Carolina Milk Commission taken action against plaintiff as result of the letter issued by the executive director.

We conclude that Judge Ervin's order dismissing the action was proper and it is, therefore, affirmed.

Affirmed.

Judges MORRIS and MARTIN concur.